# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **USA,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CRIMINAL ACTION** |
| | : | |
| **ADAM SCOTT,** | : | **NO. 10-cr-677** |
| **Defendant.** | : | |

## MEMORANDUM & ORDER

**Tucker, J.**                                                                                    **April____, 2011**

Presently before this Court are Defendant's Motion to Suppress (Doc. 22) and the

Government's Response in Opposition thereto (Doc. 28); Defendant's Motion to Compel the

Production of the Identity of the Alleged Informant (Doc. 30) and the Government's Response in

Opposition thereto (Doc. 40); and Defendant's Motion to Dismiss Indictment on Speedy Trial

Grounds, or in the Alternative, for Severance (Doc. 38) and the Government's Response in

Opposition thereto (Doc. 43).[1]  For the reasons set forth below, Defendant's Motions are denied.

## I. Introduction

On September 23, 2010, Defendant Adam Scott ("Defendant" or "Scott") was arrested on

a Complaint and warrant.  Defendant was charged by Indictment (Doc. 9) on October 13, 2010

and arraigned on October 28, 2010.  On December 8, 2010, the Government filed a Superseding

Indictment (Doc. 14) which added Vincent Marchant as a co-defendant.  In the Superseding

Indictment, Defendant was charged with five counts for conspiracy to distribute 500 grams or

more of cocaine and 28 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (Count

---

[1] Defendant's Motion for Automatic Review of Conditions of Release (Doc. 38) has been withdrawn.

One); distribution of 28 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Seven); possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Nine); possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1) (Count Ten); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Eleven). Defendant and Marchant were arraigned on the Superseding Indictment on January 6, 2011. The alleged facts giving rise to Defendant's indictment are as follows.

## II.  Factual Background

As set forth in the search warrant affidavit, in April 2010, the West Chester Police Department and the Drug Enforcement Administration (DEA) obtained authorization to conduct a wiretap on a telephone utilized by Vincent Marchant. This wiretap, specifically conversations intercepted in April and May 2010, revealed that defendant Adam Scott was one of Marchant's main sources of cocaine.

On June 2, 2010, a Pennsylvania State search warrant was executed on Marchant's residence in West Chester, Pennsylvania, and officers seized approximately eleven ounces of powder cocaine and one ounce of crack cocaine along with digital scales and packaging material. Marchant was arrested and, shortly thereafter, he made a post-Miranda statement in which he admitted that he had been selling cocaine for the past 18 months and identified Scott as one of his suppliers.

On September 16, 2010, at approximately 8:13 p.m., West Chester Police Officers saw a 2001 black Buick sedan (with Pennsylvania registration # HHR9404) with tinted windows and a broken tail light driving eastbound on West Chestnut Street. The Buick was being driven

by Scott and had no other passengers. The officers stopped the Buick, and Scott gave them his verbal consent to search the vehicle. At approximately 8:30 p.m., an officer arrived at the scene with a K-9 dog trained in the detection of narcotics. The dog alerted to the presence of narcotics in the Buick's trunk and its drivers side dashboard. Upon further inspection, officers found what appeared to be an electronically controlled trigger, possibly for a hidden compartment in the driver's side dashboard of the car. The officers released Scott and secured the Buick while waiting to obtain a warrant to search the vehicle.

At approximately 10:57 p.m. that same evening, a confidential informant ("CI"), whose past information had proven to be accurate and reliable, told the DEA that the CI had assisted Scott in Scott's drug trafficking. The CI also said that Scott had told him that the police had stopped his vehicle and discovered the secret compartment in the car. Scott also told the CI that Scott was hiding his drugs in his apartment, and that Scott was going to the Spare Rib bar located at 135 East Gay Street in West Chester with drug proceeds (in the form of U.S. currency) on his person. The CI had previously told law enforcement that Scott lived at 215 North Everhart Rd., Apt. 2C, West Chester, Pennsylvania. In addition, in the course of the investigation, agents and other law enforcement officers saw Scott's vehicle parked in front of that address. The DEA then passed the information received from the CI to the West Chester Police Department, which in turn provided the information to Officer Josh Lee. At approximately 11:14 p.m., Officer Lee saw Scott inside of the Spare Rib bar. Lee stopped and frisked Scott, and recovered $960 from Scott's person. Scott was arrested, and search of his person incident to the arrest resulted in the recovery of an Ipod Touch, an LG Metro PSC cellular telephone, and a Sanyo Redimobile PCS cellular telephone.

On September 16, 2010, Chief Magistrate Judge Thomas J. Rueter signed warrants authorizing the government to search Scott's residence at 215 North Everhart Road, Apt. 2C, West Chester, Pennsylvania, as well as Scott's vehicle (the 2001 black Buick sedan with Pennsylvania registration # HHR9404) and the Ipod and cell phones recovered from Scott's person incident to his arrest.

The agents entered the residence using a key recovered from Scott at the time of his arrest. Inside the apt, agents found $29, 689 in United States Currency, jewelry appraised at approximately $15,000, and a loaded gun hidden underneath a set of drawers in the defendant's bedroom. Also in his bedroom, agents recovered crack cocaine and marijuana from a back pack, and numerous small blue and yellow zip lock baggies which are known to be used to package and distribute drugs. The crack cocaine from the back pack was packaged in two knotted clear plastic bags and weighed 10.7 grams, and the marijuana was packaged in five plastic knotted bags, and weighed 62.3 grams. In the kitchen inside a cabinet, agents recovered a pyrex pot which contained crack cocaine which weighed 4.1 grams, a digital scale, and two boxes of baking soda which is a well-known cutting agent for the preparation of crack cocaine. Also recovered from the apartment were numerous documents in the name of Adam Scott, including a Pennsylvania Board of Probation and Parole Violation Warning, dated September 15, 2010.

### III. Pending Motions

On January 13, 2011, Defendant filed a Motion to Suppress Evidence (Doc. 22). On January 28, 2011, the Government filed a Response in Opposition thereto (Doc. 28). On February 4, 2011, Defendant filed a Motion to Compel the Production of the Identity of the Alleged Informant (Doc. 30). The Government filed a Response in Opposition thereto (Doc. 40)

on February 14, 2011.  On February 11, 2011, Defendant filed a Motion to Dismiss Indictment on Speedy Trial Grounds, or in the Alternative, for Severance and a Motion for Automatic Review of Conditions of Release (Doc. 38).  On February 18, 2011, the Government filed a Response in Opposition thereto (Doc. 43).

On February 23, 2011, the Court held a hearing and oral argument on the aforementioned motions.  During the hearing, Defense counsel withdrew the Motion for Automatic Review of Conditions of Release.  The Court now addresses the remaining pending motions.

### III.  Defendant's Motion to Dismiss Indictment on Speedy Trial Grounds

For the reasons discussed below, the Court denies Defendant's Motion to Dismiss the Indictment on Speedy Trial Grounds.

Defendant argues that his speedy trial rights were violated when he was not tried by December 22, 2010, the date he claims was the speedy trial deadline under his original indictment.  Defendant further claims that the superseding indictment cannot be used to reset the clock for calculating his speedy trial date because of the government's unreasonably dilatory conduct.  To support this contention, Defendant argues that if the alleged facts set forth in the September 16, 2010 search warrant were true, then the government already knew all of the alleged facts needed to charge Marchant in the original indictment with the offenses that it eventually alleged in the Superseding Indictment.   Specifically, Defendant points to the fact that the government intercepted phone calls between Marchant and Defendant suggesting drug activity in April and May 2010; that cocaine was seized from Marchant's residence and car on June 2, 2010; and that on the same day, Marchant submitted a lengthy interview to the West Chester police identifying Defendant as his source for cocaine.  Defendant contends the

government's two-month delay in filing the Superseding Indictment, which merely added the new conspiracy charge against him and added co-defendant Marchant, was done willfully and in bad faith.

The Government disagrees and maintains that the superseding indictment must reset the speedy trial date. The Government notes that the conspiracy charge in the superseding indictment is based on wiretap information gathered between March and June of 2010. The Government contends that this charge was filed within approximately six months of the end of the wire tap, well before the five-year statute of limitations deadline. Accordingly, the Government argues that Defendant's claim that these charges were unduly delayed is frivolous.

If a defendant enters a plea of not guilty, the Speedy Trial Act ("STA") mandates that trial must commence within seventy days, or ten weeks, of either the date on which the indictment was filed or the date on which the defendant first appeared before the court, whichever is later. 18 U.S.C. § 3161(c)(1). Generally, when the trial does not commence within the seventy-day period, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2).

There are, however, several circumstances under which a trial that begins later than seventy days after the date of the original indictment or arraignment does not violate the STA. One set of circumstances occurs when the cause of the delay fits within an exclusion specified by the statute. See 18 U.S.C. § 3161(h); Zedner v. United States, 547 U.S. 489 (2006); United States v. Lattany, 982 F.2d 866, 871 (3d Cir. 1992). The statute provides that delay resulting from, inter alia, the following two occurrences "shall be excluded in computing the time within which . . . the trial of any such offense must commence". First, the court should exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the

hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D).

Additionally, the court should exclude "delay reasonably attributable to any period, not to exceed

thirty days, during which any proceeding concerning the defendant is actually under advisement

by the court." 18 U.S.C. § 3161(h)(1)(H).

Moreover, when a superseding indictment contains a new charge not identified in the

criminal complaint or charged in the original indictment, then that superseding indictment

commences a new, independent 70-day speedy trial period. <u>Lattany</u>, 982 F.2d at 873 n.7. A

superseding indictment also commences a new, independent 70-day speedy trial period when the

superseding indictment adds a new defendant. <u>See</u> <u>United States v. Liu</u>, 2011 WL 182228 (9th

Cir. 2011) (citing <u>United States v. King</u>, 483 F.3d 969, 973 (9th Cir. 2007)). <u>See also</u> <u>Henderson</u>

<u>v. United States</u>, 476 U.S. 321, 323 n. 2 (1986) ("[a]ll defendants who are joined for trial

generally fall within the speedy trial computation of the latest co-defendant."); <u>United States v.</u>

<u>Adams</u>, 625 F.3d 371, 377 (7th Cir. 2010) ( ". . . when an indictment charges more than one

defendant, the speedy trial clock for all defendants typically does not begin to run until the last of

the defendants appears [and] [t]his principle holds true when an additional defendant is added to

the case by way of a superseding indictment.") (internal citations omitted).

For the addition of a co-defendant to restart the STA clock, the court must establish that

any delay in adding the co-defendant was reasonable and not caused by any bad faith on the part

of the Government. <u>King</u>, 483 F.3d at 974. That said, a defendant's mere assertion that the

Government's delay in adding a co-defendant in a superseding indictment is unreasonable,

without any analysis or argument to substantiate this assertion, lacks the persuasive authority

necessary to counter the restart of the STA clock. <u>See</u> <u>Adams</u>, 625 F.3d at 378 (defendant

waived the argument of unreasonableness when he did not contend that any other defendant not named in the original indictment was improperly joined; did not contend that the new defendant was named on a pretext to delay the trial; and did not offer any analysis of why the delay in indicting should be deemed unreasonable on the facts of the case).

For example, in King, the defendant argued that his STA rights were violated when the court reset the STA date according to the calculation for a new defendant who was added seven months after the original indictment date. 483 F.3d at 974. The Court rejected the defendant's argument and found that it was reasonable for the government to add a defendant seven months after the filing of an indictment due to the complexity of the case and because there was no evidence that the prosecution attempted to circumvent the protections of the STA. Id. at 974.

Here, for the reasons that follow, the Court finds that (1) the beginning of the 70-day speedy trial period commenced on January 6, 2011; (2) the expiration of the 70-day speedy trial period is May 27, 2011; and (3) no violation fo the STA has occurred.

In this matter, the superseding indictment filed on December 8, 2010 contained a new charge for conspiracy and added co-defendant Marchant, neither of which was a part of the original indictment of October 13, 2010. The Court finds Defendant's arguments that the delay in filing the superseding indictment was unreasonable and done in bad faith to be without merit. As such, the Court finds the superseding indictment could operate to restart the 70-day speedy trial period. Because, however, Defendant and co-defendant Marchant were not arraigned pursuant to the superseding indictment until January 6, 2011, and the arraignment date is the latter of the two possible dates (the date of the indictment or the date of the arraignment), the arraignment date must be used calculate the commencement of Defendant's speedy trial period.

Furthermore, in calculating the seventy-day speedy trial deadline, the Court is obliged to exclude a reasonable period of delay resulting from the filing of the pre-trial motions through the conclusion of the hearing on those motions and a period of no more than thirty days attributable to the time those motions are under advisement by the Court. Here, one week after the arraignment on the superseding indictment, Defendant filed the first of several pre-trial motions. On January 13, 2011, Defendant filed a Motion to Suppress Evidence; on February 4, 2011, Defendant filed a Motion to Compel the Production of the Identity of the Alleged Informant; and on February 11, 2011, Defendant filed a Motion to Dismiss Indictment on Speedy Trial Grounds, or in the Alternative, for Severance and a Motion for Automatic Review of Conditions of Release. The Court held a hearing and oral argument on the aforementioned motions on February 23, 2011. Thus, the Court should exclude from the calculation of the seventy-day period the forty-one days between January 13, 2011 and February 23, 2011, to account for the time between the filing of the first pre-trial motion and the hearing on those motions. Additionally, the Court may exclude up to thirty days after the hearing, which is the period from February 23, 2011 through March 25, 2011, to account for the time under which the matter was under advisement.

After incorporating the forty-one day and thirty-day exclusions, it is clear that the seventy-day speedy trial period has not expired. There was one week between the arraignment and the filing of the first pretrial motion. The remaining nine weeks begin on March, 25, 2011 and run through May 27, 2011. As this date has not passed, the Court must conclude that no violation of the STA has occurred. Based on the foregoing, Defendant's Motion to Dismiss the Indictment on Speedy Trial Grounds must be denied.

## IV. Defendant's Motion for Severance

For the reasons discussed below, the Court denies Defendant's Motion for Severance.[2]

Defendant argues that, if the Court is unwilling to dismiss the claims against him pursuant to the Speedy Trial Act, the only way to protect his speedy trial rights is for the Court to grant him severance. The Government disagrees and counters that severance would conflict with the Court's preference for trying together those defendants who have been indicted together. The Government further highlights that Defendant has failed to demonstrate that the evidence is so complicated or so overwhelming that severance would be in the interest of justice.

Pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, two or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Fed. R. Crim. P. 8(b). The Third Circuit has expressed "a preference in the federal system for joint trials of defendants who are indicted together", Zafiro v. United States, 506 U.S. 534, 537 (1993), "and where defendants are charged with a single conspiracy", United States v. Sandini, 888 F.2d 300, 305 (3d Cir. 1989).

A defendant seeking severance from a co-defendant bears a "heavy burden and must demonstrate not only abuse of discretion in denying severance, but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Urban, 404 F.3d 754, 776 (3d Cir. 2005) (internal quotations and citations omitted); see also United States v. Balter, 91 F.3d 427, 433 (3d Cir.1996). "'A defendant is not

---

[2] Co-defendant Marchant entered a guilty plea on April 12, 2011. Nonetheless, the Court shall addresses the substance of Defendant's Motion for Severance.

entitled to severance merely because the evidence against a co-defendant is more damaging than that against him.'" United States v. Adams, 759 F.2d 1099, 1112 (3d Cir. 1985) (quoting United States v. Dansker, 537 F.2d 40, 62 (3d Cir. 1976). Rather, "[s]ome exacerbating circumstances, such as the jury's inability to 'compartmentalize' the evidence, are required." Adams, 759 F.2d at 1112-13 (internal citations omitted). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. That said, however, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. at 538-39. See, e.g., United States v. Spencer, 1999 WL 973856, at * 3 (E.D. Pa. Oct. 25, 1999) (denying severance motion and explaining how "any prejudice resulting from different degrees of culpability will be remedied by the Court through appropriately tailored instructions at trial").

Here, the Court agrees with the Government and finds that Defendant has not met its burden of demonstrating that severance is warranted. Defendant has not put forward any concrete examples of mutually antagonistic defenses he may have with his co-defendant proceeding to trial. In fact, Defendant provided no argument to support his claim that severance is warranted. Furthermore, the Court believes that less severe alternatives to severance exist to adequately mitigate against any potential prejudice to Defendant. For example, the Court can adequately assure that a jury will not improperly consider evidence offered against one defendant as to the other by giving a cautionary instruction. As Defendant has not shown that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial, the Court denies his Motion for Severance.

**V.  Defendant's Motion to Compel the Production of the Identity of the Confidential Informant**

For the reasons discussed below, the Court denies Defendant's Motion for to Compel the Production of the Identity of the Confidential Informant.

Defendant argues that the Court should order the government to produce the identity of the confidential informant ("CI" or "informant") identified in the search warrant affidavit.  To support this argument, Defendant claims that the CI is the only person described in the affidavit who places drugs in Scott's alleged apartment.  Defendant claims that because the search warrant and affidavit contained several factual inconsistencies, one could reasonably conclude that neither the informant nor law enforcement had actually ever been to the apartment building for which the warrant was sought.  Specifically, Defendant points out that the address to be searched appearing in the affidavit supporting the search warrant, 215 North Everhart Rd., Apt. 2C, Coatesville, PA, does not exists because the actual street address is located in the city of West Chester, PA and not Coatesville.  Defendant also points out that the description of the apartment in Attachment A of the search warrant is wrong in that the apartment building is yellow/orange, not red; the interior doors of the individual apartment units are brown, not white; and, the door to the specific apartment in question says "C2" not "2C".  Defendant claims that he is entitled to the production of the identity of the informant to assess whether the inaccurate descriptions are actually "editing errors."  Moreover, Defendant claims that the alleged informant would be vital to his defense on the issue of whether Defendant constructively possessed a firearm and drugs found in the West Chester apartment.

The Government disagrees and contends that Defendant has not demonstrated a need for

the CI's identity that can overcome the government's privilege to withhold the CI's identity. First, the Government claims that the CI here acted as a mere tipster and was neither a participant nor a witness to the charged offense. Moreover, the Government contends that the police corroborated the information and acted on it to build the necessary probable cause for the search warrant. The Government further contends that Defendant has not met its burden to show that the CI would be a vital defense witness at trial on the issue of whether Defendant possessed the firearm and drugs recovered from his residence because Defendant does nothing to establish how the CI would provide a specific legal defense. The Government further maintains that the use of Coatesville in the affidavit was an administrative error by the affiant. Moreover, the Government argues that Defendant provides no legal support for his claim that this error either entitles him to question the CI or requires the disclosure of the CI's identity.

Courts have long recognized that effective law enforcement and the protection of the public interest require that the Government be permitted, absent exigent circumstances, to withhold the identity of informants. See Roviaro v. United States, 353 U.S. 53 (1957). This privilege of non-disclosure is not absolute; and "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. See also McCray v. Illinois, 386 U.S. 300, 310. (1967). Thus, when determining whether to compel the disclosure of a CI's identity, the court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. Pickel v. United States, 746 F.2d 176, 181 (3d Cir. 1984).

Before undertaking the balancing test, the defendant must first meet his or her burden to

set forth a specific need for disclosure. See United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981). A defendant cannot meet this burden by merely speculating that the CI may have some evidence helpful to the defendant's defense. Id. ("The mere speculation that an eyewitness may have some evidence helpful to the defense's case is not sufficient to show the specific need required by Roviaro."). Rather, "[t]he defendant must indicate some concrete circumstances that might justify overcoming both the public interest in encouraging the flow of information [from informants to law enforcement] and the informant's private interest in his [or her] own safety." United States v. Robles, 814 F. Supp. 1233, 1240 (E.D. Pa.1993) (quoting United States v. Estrella, 567 F.2d 1151, 1153 (1st Cir. 1977)).

Among the factors for consideration in undertaking the balancing test are the nature of the crime charged, the possible defenses, and the possible significance of the informant's testimony. Roviaro, 353 U.S. 53, 62. The Third Circuit has interpreted Roviaro and McCray to require the identity of a confidential informant be disclosed when "(1) the possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; [or] (4) the informer was the sole participant other than the accused, in the transaction charged." Jiles, 658 F.2d at 198 (citing McCray, 386 U.S. at 310-11; Roviaro, 353 U.S. at 63-65).

When applying Roviaro standards, "one of three types of cases" may emerge. Id. at 197. First, there is the "extreme situation such as that in Roviaro itself, in which the informant has played an active and crucial role in the events underlying the defendant's potential criminal liability. In these cases, disclosure and production of the informant will in all likelihood be required to ensure a fair trial." Id. The second group of cases involves confidential informants

-14-

who were not active participants or eye witnesses but rather tipsters. Generally, courts have found these facts do not warrant disclosure. See United States v. Moreno, 588 F.2d 490, 494 (5th Cir. 1979). The third category, where the informant was a witness but did not participate in the criminal activity, "falls between these two extremes and it is in this group that the balancing becomes most difficult." Jiles, 658 F.2d at 197.

Here, the Court finds that the nature of the CI's role in the underlying events does not necessarily lean towards disclosure. The CI was more involved than that of a mere tipster, but not as involved as that of an active and crucial participant in the criminal activity alleged. Though the affidavit supporting the search warrant states that the CI admitted to assisting Defendant in drug trafficking activities by acting as a "look-out" for law enforcement, the Court views the CI's role as minor in the scheme of Defendant's overall alleged drug trafficking conspiracy.

Furthermore, the Court agrees with the Government's contention that Defendant has failed to meet his burden to show the specific need for disclosure of the CI's identity. The Court is unpersuaded that the minor editing errors and insignificant description differences found in the search warrant and affidavit justify the disclosure of the CI. Testimony at the hearing and exhibits submitted to court indicated that the correct address of the apartment in question did in fact appear on the face sheet of the search warrant, the attachment of the search warrant, and on the face sheet of the application and affidavit for the search warrant. Defendant's sole other argument is that the CI would be vital to his defense on the issue of whether he constructively possessed a firearm and drugs found in the West Chester apartment. This argument, however, is insufficient to justify disclosing the identity of the informant. Testing the validity and veracity of

the CI's testimony to challenge the probable cause determination does not override the Government's privilege of non-disclosure. Defendant has not established how the CI would provide a specific legal defense, such as entrapment, alibi, or mistaken identity, which is his burden under Roviaro and Jiles. Moreover, the affidavit clearly indicates that the information the CI provided regarding Defendant's activities and tying the apartment to Defendant was corroborated by police officers. Since Defendant would be able to cross-examine the police officers who actually searched the apartment and found the firearm and drugs therein, his rights under the Confrontation Clause will not be infringed. For these reasons, the Motion to Compel the Disclosure of the Identity of the Confidential Informant must be denied.

## VI. Defendant's Motion to Suppress

For the reasons discussed below, the Court denies Defendant's Motion to Suppress.

The Government intends to introduce evidence seized from searches of premises located at 215 North Everhart Road, Apt. 2C, West Chester, PA; a black 2001 Buick Sedan with PA Registration number HHR9404; a black and silver Ipod Touch; a black and silver LG Metro PCS cell phone; and a black and silver Sanyo Redimobile PCS cell phone. All of these searches were conducted pursuant to search warrants signed by Magistrate Judge Thomas J. Reuter on September 16, 2010. These warrants were issued based upon Special Agent Mark Koss' supporting affidavit. Defendant argues that all of the evidence seized must be suppressed for various reasons.

To support his Motion to Suppress, Defendant argues that (1) the affidavit described a different address than the warrant; (2) the affidavit fails to establish probable cause; (3) the affidavit is based in part upon an illegal search of the Defendant's person and the black Buick;

(4) the affidavit contains material misrepresentations with regard to descriptions and interpretations of telephone conversations between Defendant and his alleged co-conspirator Vincent Marchant; and (5) the affidavit creates a fictitious CI; and (6) the information in the affidavit is stale. With respect to the search of Defendant at the Spare Rib bar, Defendant argues that the police officers unlawfully seized the U.S. currency found on Defendant because they did not point to specific and articulable facts indicating that criminal activity was afoot. With respect to the search of Defendant's vehicle, Defendant argues that although he consented to the search of the vehicle, the search exceeded the scope of the alleged consent because he did not agree that the car could be detained while a sniffer dog was called. Defendant claims that facts concerning these two searches must be excised from the affidavit. Once these facts are excised, Defendant argues that the remaining facts are insufficient for a finding of probable cause.

The Government disagrees and argues that the September 16, 2010 search warrant was valid and there is no basis to grant Defendant's motion to suppress. The Government argues that the Magistrate Judge did not err in finding probable cause existed because the affidavit contained ample facts to support the conclusion that evidence of illegal drug activity would be found at the West Chester apartment including the following: (1) references to the intercepted conversations between Defendant and Marchant from April and May 2010 in which the two discussed cocaine purchases; (2) Marchant's post-arrest statements that Defendant had supplied him with cocaine; (3) the police discovery of the electronically controlled hidden compartment in Defendant's Buick on September 16, 2010 after Defendant was lawfully stopped for driving the vehicle with an inoperable tail light and Defendant consented to a vehicle search; (4) tips from a reliable confidential informant that Defendant had drugs hidden in his West Chester apartment and had

planned to take drug proceeds to the Spare Rib bar in West Chester; and (5) Officer Lee's lawful

<u>Terry</u> stop and frisk of Defendant in the Spare Rib bar and incidental discovery of $960 on his

person during the pat down.  The Government maintains that none of the facts in the affidavit

were the result of illegal police activity.  The Government also contends that Defendant failed to

make the required preliminary showing that the statement that Marchant identified him as his

drug source is false.  Finally, the Government argues that the information in the search warrant

affidavit was not stale despite the fact that the intercepted phone calls occurred four months

before the search warrant signed because of the ongoing and continuous nature of narcotics

trafficking.

At the outset, it is essential to recognize the limited role of the reviewing court in

evaluating a Motion to Suppress evidence seized pursuant to a valid search warrant.  So long as

the magistrate had a substantial basis for concluding that a search would uncover evidence, the

Fourth Amendment requires no more.  <u>United States v. Telfe</u>, 722 F.2d 1114 (3d Cir. 1983).

Thus, the district court exercises only a "deferential review" of the initial probable cause

determination made by the magistrate judge.  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983); <u>United

States v. Hodge</u>, 246 F.3d 301, 305 (3d Cir.2001) ("In making this determination, the Court

confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not

consider information from other portions of the record.'") (quoting <u>United States v. Jones</u>, 994

F.2d 1051, 1055 (3d Cir. 1993)).

Although the Court's finding that probable cause existed must be based only on those

facts contained in the supporting affidavit, a magistrate is permitted "give considerable weight to

the conclusions of experienced law enforcement officers regarding where evidence of a crime is

likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (3d Cir. 1996)). To determine the sufficiency of the warrant, this Court must look at the probable cause under the "totality of the circumstances." Gates, 462 U.S. at 238. The Court must determine whether, on the four corners of the affidavit, there was a substantial basis for the magistrate judge's determination that probable cause existed. In so doing, the Third Circuit has articulated that statements in an affidavit must be read as a whole and not in isolation. United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993).

### A. Typographical Errors in the Search Warrant Affidavit

The Third Circuit has held that a typographical error in an address in the affidavit supporting a search warrant does not require suppression of the evidence found in the search when the warrant itself contains the correct address and sufficiently allows the police to ascertain and identify the place intended. United States v. Merchant, 376 Fed. App'x 172, 175 (3d Cir. 2010) (affirming lower court's denial of the defendant's motion to suppress evidence recovered in a search of 405 S. Wayne Street, the address correctly identified in the warrant, even though the supporting affidavit mistakenly referred to 405 S. Grand Street). See also United States v. Wallace, 2009 WL 3182903, at * 1 (M.D. Pa. Sept. 30, 2009) (concluding that a warrant listing the license plate number on the vehicle to be searched as GZP 8770 when it was actually GZT 8770 was "sufficiently specific" and did not render the warrant facially invalid); United States v. Willis, 2007 WL 4126510, at *5 (E.D. Pa. Nov. 20, 2007) (refusing to suppress evidence seized from the defendant's residence where the incorrect house number was listed in the agent's

application for a search warrant because the affidavit provided a specific description of the residence to be searched; the agent who prepared the affidavit had become familiar with the residence during his investigation; the affidavit contained ample support for a determination of probable cause for the search; and the error was not knowingly or recklessly false).

Accordingly, here, that the affidavit supporting the search warrant in two places indicated that Defendant's address was located in Coatesville, and not West Chester, is of no consequence when the face sheet of the supporting affidavit and the warrant itself both correctly identified the address as being located in West Chester. Thus, the Court finds this error and other minor inconsistencies with respect to the color of the apartment building and interior apartment door color described in the affidavit to be de minimis at best; they in no way serve to undermine the sufficiency or validity of the search warrant and they do not provide an adequate basis to support Defendant's motion to suppress because the affidavit and warrant in toto clearly contained sufficient information for the police officers to ascertain the correct address.

### B. Misrepresentations and False Allegations in the Search Warrant Affidavit

There is a presumption of validity with respect to affidavits supporting search warrants. Franks v. Delaware, 438 U.S. 154, 171 (1978). To overcome this presumption of validity and be entitled to a hearing on the truthfulness of an affidavit, a defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to a finding of probable cause. United States v. Yusef, 461 F.3d 374, 383 (3d Cir. 2006). In making this preliminary showing, the defendant may not rest on mere conclusory allegations, but rather, the defendant must present an offer of proof contradicting the affidavit, such as sworn affidavits or otherwise reliable

statements from witnesses.  <u>Franks</u>, 438 U.S. at 171.  If a <u>Franks</u> hearing is granted, the defendant must ultimately prove by a preponderance of the evidence that: (1) the affiant deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant; and (2) such statements or omissions were material, or necessary, to the probable cause determination.  <u>Yusef</u>, 461 F.3d at 383.

The Third Circuit has determine that, in this context, assertions are made with reckless disregard for the truth "when an officer has obvious reasons to doubt the truth of what he or she is asserting."  <u>Id.</u> (quoting <u>Wilson v. Russo</u>, 212 F.3d 781, 787 (3d Cir. 2000)).  A statement that is false due to negligence or an innocent mistake does not satisfy this standard.  <u>Id.</u>  If the court determines that the affiant made a false statement either deliberately or with reckless disregard for the truth, then that statement must be excised from the affidavit.  <u>Id.</u>

Here, the Court finds that Defendant has failed to make the required preliminary showing that the affidavit contains material misrepresentations with regard to descriptions and interpretations of telephone conversations between Defendant and his alleged co-conspirator Vincent Marchant or that the confidential informant referenced in the affidavit is a "fiction" created by the Government.  Defendant claims that the statement that Marchant identified him as a drug source is false because Marchant did not say "Adam," "Scott," or "Adam Scott" when talking to the police.  The affidavit, however, does not state that Marchant specifically identified Defendant by his real name; thus, it is clear that there is no basis for Defendant to claim that any statement in the affidavit regarding his identity was deliberately or recklessly false.[3]  Moreover,

---

[3]  During the hearing, the Government witness testified that Marchant identified his drug supplier as "Jay" and, when shown a picture of Defendant, Marchant stated that it was a picture of "Jay."  The Court recognizes that it is common for individuals be known by an alias in the drug trafficking world.  <u>See, e.g.</u>, <u>United States v. Zahir</u>, 242 Fed. App'x 880 (3d Cir. 2007).

Defendant's conclusory allegation that the CI is merely a fiction, with nothing more, is insufficient to make a preliminary showing of any falsehood, deliberate or otherwise, with respect to that fact. As such, Defendant's allegations of falsehood and misrepresentation in the search warrant affidavit form no basis upon which to grant his motion to suppress.

### C. Search of Defendant's 2001 Buick

While a warrant generally must be obtained in order for a search to be constitutionally valid, "a search conducted pursuant to consent is one of the specifically established exceptions to the warrant requirement." United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003). To determine the scope of the consent granted, the court must apply an objective standard to assess what a reasonable person would have understood from the exchange between the officer and defendant. Florida v. Jimeno, 500 U.S. 248, 251 (1991).

"[W]here a defendant willingly consents to a search, that search may not be invalidated solely because of how, or by whom, the search is conducted." U.S. v. Pelle, 2006 WL 436920, at * 4 (D.N.J. Feb. 17, 2006) (relying in part on United States v. Perez, 37 F.3d 510, 515-16 (9th Cir. 1994) where the court held that the mere use of a narcotics dog by police officers in conducting an otherwise consensual search of the defendant's vehicle neither made the search more intrusive nor infringed upon the defendant's privacy interest).

Here, the Court finds that the police acted lawfully in searching Defendant's vehicle. On September 16, 2010, after Defendant was lawfully stopped for driving the vehicle with an inoperable tail light, Defendant consented to a vehicle search. The police used a K-9 dog trained in the detection of narcotics to search the vehicle and discovered the electronically controlled hidden compartment in the trunk area of the vehicle. Similar to the defendant in Perez,

Defendant concedes that he consented to the search, but argues that the scope of the search was excessive because the police used a K-9 dog to assist with the search. This argument, however, lacks merit. As Pelle and Perez make clear, the mere use of narcotics dogs in a consensual search does not render the search unlawful. Moreover, an objective view of the facts shows that the use of narcotics dogs in this case in no way exceeded the scope of the otherwise consensual search. Defendant gave no indication that he did not consent to any aspect of the search, including the use of a K-9 dog to sniff for the presence of drugs. In fact, Defendant has presented no evidence to support his claim that the scope of his consent was limited in any way. As such, the Court finds that the search of the vehicle was proper and the vehicle should not be suppressed.

### D.  Search of Defendant at the Spare Rib Bar

In addition to the consensual search, another well-established exception to the warrant requirement exists allowing a police officer to conduct a brief, investigatory stop and search of an individual when the officer has a "reasonable, articulable suspicion that criminal activity is afoot" and that the individual is armed and dangerous. See United States v. Gatlin, 613 F.3d 374, 378 (3d Cir. 2010) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). To assess whether the police office had the requisite reasonable suspicion to conduct a Terry stop, the Court must determine that the police officer had a particularized and objective basis for suspecting the particular person stopped was engaged in criminal activity based upon the totality of the circumstances. United States v. Nelson, 284 F.3d 472, 478 (3d Cir.2002).

In weighing to totality of the circumstances, the Court is reminded that factors independently susceptible to innocent explanation can collectively amount to reasonable

suspicion. United States v. Brown, 448 F.3d 239, 252 (3d Cir. 2006). Moreover, police officers may rely on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. United States v. Arvizu, 534 U.S. 266, 274 (2000); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (although probable cause must ultimately be decided by the courts, not the police, courts must take care to remember that police officers may well draw inferences and make deductions).

The Third Circuit has held that an informant's tip may be sufficient to establish reasonable suspicion for a Terry stop so long as the Court is convinced of the informant's veracity, reliability, and basis of knowledge. See United States v. Johnson, 592 F.3d 442, 449 (3d Cir. 2010). In assessing the reliability of the informant's tip, the Court should consider several factors including:

> (1) whether the information was provided to the police in a face-to-face
>
> interaction, allowing an officer to assess directly the informant's credibility;
>
> (2) whether the informant can be held responsible if her allegations are untrue;
>
> (3) whether the information would not be available to the ordinary observer;
>
> (4) whether the informant has recently witnessed the criminal activity at issue; and
>
> (5) whether the witness's information accurately predicts future activity.

Id. "Though these factors all are relevant to [the Court's] analysis, no single factor is dispositive" or necessary. Id.

The Third Circuit has also noted the propriety of a safety frisk of an individual subject to a Terry stop when the police officer suspects that person is engaged in drug trafficking. United

States v. Sanchez, 2010 WL 4243896, at \*3 (3d Cir. Oct. 28, 2010) ("Given that drug traffickers often carry weapons and reasonable suspicion existed that the Appellants were drug dealers, the troopers reasonably suspected that both Appellants were armed and dangerous, justifying the minimally invasive search."); United States v. Johnson, 2007 WL 2916157, at \*4 (E.D. Pa. Oct. 5, 2007) (". . . a Terry protective frisk may be justified when the individual is suspected of drug activity: 'Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction.'") (internal citations omitted). The purpose of the safety frisk is "not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972). Even though "a Terry search cannot purposely be used to discover contraband, . . . it is permissible that contraband be confiscated if spontaneously discovered during a properly executed Terry search." United States v. Yamba, 506 F.3d 251, 259 (3d Cir. 2007).

Another exception to the general warrant requirement is a search incident to a lawful arrest, which derives from the reasonable interests in officer safety and evidence preservation that are typically implicated in arrest situations. Arizona v. Gant, 129 S. Ct. 1710 (2009).

> Applying this reasonableness test to the area of searches incident to arrests, one thing is clear at the outset. Search of an arrested man and of the items within his immediate reach must in almost every case be reasonable. There is always a danger that the suspect will try to escape, seizing concealed weapons with which to overpower and injure the arresting officers, and there is a danger that he may destroy evidence vital to the prosecution.

Chimel v. California, 395 U.S. 752, 773 (1969). See also United States v. Myers, 308 F.3d 251, 266 (2002) ("This exception to the general warrant requirement . . . is a carefully tailored and narrowly crafted license that addresses the tension between the need for effective law

enforcement on the one hand, and constitutionally guaranteed liberty on the other."). So long as the search "is confined to, and controlled by, the circumstances that warrant the intrusion," a search incident to arrest is "reasonable" within the meaning of the Fourth Amendment. United States v. Myers, 308 F.3d at 266.[4]

Here, the Court agrees with the Government and finds that based on the totality of the circumstances, Officer Lee reasonably suspected that Defendant was engaged in drug trafficking and therefore properly conducted the Terry stop at the Spare Rib bar. First, approximately three hours before the officer stopped Defendant in the Spare Rib bar, the police had already uncovered an electronically controlled trigger for a secret compartment in Defendant's vehicle. Courts in this district have frequently determined, as does the Court in this case, that a vehicle which has been modified to contain a secret compartment designed to carry contraband may be suggestive of the owner's engagement in illegal drug activity. See, e.g., United States v. Del Valle, 323 Fed. App'x 125, 127 (3d Cir. 2009); United States v. Velasquez, 885 F.2d 1076, 1083 (3d Cir. 1989). Second, the police had already learned from a CI that Defendant was storing drugs at his residence, and that Defendant had planned to transport drug proceeds on his person to the Spare Rib bar that evening. The Court finds there was a sufficient basis to deem the CI's tip to be reliable because (1) the CI had provided reliable information in the past; (2) the information that the CI provided about Defendant's whereabouts and the contraband found on

---

[4] It is well established that probable cause for a warrantless arrest exists when, at the time of the arrest, the facts and circumstances within the officer's knowledge are "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). In Illinois v. Gates, 462 U.S. 213, 103 (1983), the Supreme Court adopted a "totality of the circumstances" approach to evaluating whether probable cause exists for the issuance of a search warrant. "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). "It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." Id.

Defendant's person and at his residence would not be available to the casual observer; and (3) the CI's tip accurately predicted what happened in the future.

The Court also finds that Officer Lee was justified in conducting a safety frisk because he reasonably suspected that Defendant was armed and dangerous. Because Officer Lee suspected Defendant was engaged in drug trafficking, like the officers in Sanchez and Johnson, Officer Lee reasonably concluded that it was likely that Defendant was carrying a weapon to protect his drugs and/or drug proceeds.

Finally, the Court finds that the $960 in U.S. currency found in Defendant's possession on should not be suppressed because it was lawfully seized. As the Third Circuit in Yamba indicated, an officer may confiscate contraband if it is spontaneously discovered during a properly executed Terry search, as long as the search was not conducted for the sole purpose of discovering the contraband. As the Court has already stated, Officer Lee conducted the safety frisk of Defendant because he reasonably suspected that Defendant was engaged in narcotics trafficking and was armed and dangerous. Thus, the objective of the search was proper.

Assuming arguendo, however, that there was any merit in Defendant's contention that Officer Lee's suspicion was unreasonable, the seizure of the evidence would still be deemed lawful as it would be sheltered by the exception for warrantless searches and seizures incident to arrest. Hearing testimony revealed that right after Officer Lee conducted the Terry stop of Defendant, he placed Defendant under arrest. Based on the totality of the circumstances presented in this case, the Court finds that Officer Lee had sufficient objective facts to find probable cause that Defendant was committing an offense and was therefore justified in arresting him. These facts include (1) both Agent Koss and Officer Lee's extensive experience with and

knowledge of drug trafficking operations, including, inter alia, drug traffickers' tendency to keep

on hand currency to finance their drug operations and common use of their homes and cars to

secure their product and paraphernalia; (2) electronic surveillance revealing repeated

conversations between Defendant and co-defendant Marchant in which they discussed cocaine

transactions; (3) the earlier seizure of Defendant's 2001 Buick that had heavily tinted windows

and contained a secret compartment suggestive of Defendant's participation in illegal drug

activity; and (4) the tip from the reliable CI who indicated that Defendant was hiding drugs in his

apartment and taking drug proceeds to the Spare Rib bar that night.  Since there was probable

cause to arrest Defendant, it was certainly reasonable for Officer Lee to search Defendant and

confiscate the money discovered.  Based on the foregoing, the Court finds that the money should

not be suppressed.

### E.  Information in the Search Warrant Affidavit was Not Stale

It is well-established that the nature of the crime and type of evidence presented, rather

than merely the age of the information, must be considered in determining whether information is

stale.  United States v. Harvey, 3 F.3d 1318, 1322 (3d Cir. 1993).  The Third Circuit has

explained that "where the facts adduced to support probable cause describe a course or pattern of

ongoing and continuous criminality, the passage of time between the occurrence of the facts set

forth in the affidavit and the submission of the affidavit itself loses significance."  United States

v. Urban, 404 F.3d 754, 774 (3d Cir. 2005) (internal citations omitted).  The protracted and

continuous nature of narcotics operations extends the shelf life of information in determining

staleness.  See United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983).  See e.g., United

States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005) (upholding a finding of probable cause based

on observation of narcotics activity that occurred seven months earlier because the later search involved a similar type of narcotics offense); United States v. Filiberto, 712 F. Supp. 482, 486 (E.D. Pa. 1989) (finding that information obtained two years prior to arrest was not stale in light of the continuous nature of the narcotics trafficking alleged in the affidavit).

Here, the Court finds that Defendant's argument that the information regarding the intercepted phone calls in April and May 2010 between Marchant and Defendant involving drug trafficking and the information regarding Defendant's address is stale to be wholly without merit. The intercepted phone calls spread over the course of the two months indicate that Defendant was involved in protracted and continuous narcotics operations. Indeed, the protracted and continuous nature of Defendant's drug trafficking activities was confirmed in September 2010, four months later, when the CI told law enforcement that Defendant was storing drugs in his apartment, when the police found the hidden compartment in Defendant's vehicle, and when the police recovered drug proceeds from Defendant's person at the Spare Rib bar. Thus, the fact that the intercepted conversations occurred four months before the search does not render the information stale. Moreover, the affidavit states that during the investigation, law enforcement surveillance revealed that Defendant's vehicle was often parked in front of the 215 N. Everhart Road apartment building ; and the CI told police officers in September 2010 that Defendant was storing drugs at that apartment "2C". Thus, the information concerning Defendant's address was very recent. Based on these facts, the Court finds that Defendant's argument concerning the alleged staleness of the information in the search warrant affidavit does not support his motion to suppress.

In sum, the Court finds that Defendant has failed to meet his burden of proving that any

of the physical evidence seized requires suppression.  Based on the totality of the circumstances and the four corners of the affidavit as a whole, and drawing reasonable inferences therefrom, it is clear that Magistrate Judge Rueter had a sufficient basis upon which to determine that probable cause existed to issue the search warrant.  Thus, the Court finds that the warrant was properly issued and the evidence obtained pursuant to the search warrant and the lawful searches and seizures conducted by the police of Defendant's 2001 Buick and Defendant's person at the Spare Rib bar shall not be suppressed.

## VII.  Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 22); Defendant's Motion to Compel the Production of the Identity of the Confidential Informant (Doc. 30); and Defendant's Motion to Dismiss Indictment on Speedy Trial Grounds, or in the Alternative, for Severance (Doc. 38) are denied.  An appropriate Order follows.