IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| USA, | : |
|     Plaintiff, | : |
| v. | :   CRIMINAL ACTION |
| ADAM SCOTT, | :   NO. 10-cr-677 |
|     Defendant. | : |

**MEMORANDUM & ORDER**

Tucker, J.                                                                                                                                                                         July____, 2012

Presently before this Court is Defendant's Motion For Reconsideration of Denial of Suppression Motion and for a Frank's Hearing (Doc. 100) and the Government's Response in Opposition thereto (Doc. 103). For the reasons that follow, Defendant's motion is denied.

**I.  Introduction**

On September 23, 2010, Defendant Adam Scott ("Defendant" or "Scott") was arrested on a Complaint and warrant. Defendant was charged by Indictment (Doc. 9) on October 13, 2010 and arraigned on October 28, 2010. On December 8, 2010, the Government filed a Superseding Indictment (Doc. 14) which added Vincent Marchant as a co-defendant. In the Superseding Indictment, Defendant was charged with five counts for conspiracy to distribute 500 grams or more of cocaine and 28 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (Count One); distribution of 28 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Seven); possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Nine); possession of a firearm in furtherance of drug trafficking in violation of

18 U.S.C. § 924(c)(1) (Count Ten); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Eleven).  Defendant and Marchant were arraigned on the Superseding Indictment on January 6, 2011.  The alleged facts giving rise to Defendant's indictment are as follows.

## II.   Factual Background and Procedural History

As set forth in the search warrant affidavit, in April 2010, the West Chester Police Department and the Drug Enforcement Administration (DEA) obtained authorization to conduct a wiretap on a telephone utilized by Vincent Marchant.  This wiretap, specifically conversations intercepted in April and May 2010, revealed that defendant Adam Scott was one of Marchant's main sources of cocaine.

On June 2, 2010, a Pennsylvania State search warrant was executed on Marchant's residence in West Chester, Pennsylvania, and officers seized approximately eleven ounces of powder cocaine and one ounce of crack cocaine along with digital scales and packaging material. Marchant was arrested and, shortly thereafter, he made a post-Miranda statement in which he admitted that he had been selling cocaine for the past 18 months and identified Scott as one of his suppliers.

On September 16, 2010, at approximately 8:13 p.m., West Chester Police Officers saw a 2001 black Buick sedan (with Pennsylvania registration # HHR9404) with tinted windows and a broken tail light driving eastbound on West Chestnut Street. The Buick was being driven by Scott and had no other passengers. The officers stopped the Buick, and Scott gave them his verbal consent to search the vehicle. At approximately 8:30 p.m., an officer arrived at the scene with a K-9 dog trained in the detection of narcotics. The dog alerted to the presence of narcotics

in the Buick's trunk and its drivers side dashboard. Upon further inspection, officers found what appeared to be an electronically controlled trigger, possibly for a hidden compartment in the driver's side dashboard of the car. The officers released Scott and secured the Buick while waiting to obtain a warrant to search the vehicle.

At approximately 10:57 p.m. that same evening, a confidential informant ("CI"), whose past information had proven to be accurate and reliable, told the DEA that the CI had assisted Scott in Scott's drug trafficking. The CI also said that Scott had told him that the police had stopped his vehicle and discovered the secret compartment in the car. Scott also told the CI that Scott was hiding his drugs in his apartment, and that Scott was going to the Spare Rib bar located at 135 East Gay Street in West Chester with drug proceeds (in the form of U.S. currency) on his person. The CI had previously told law enforcement that Scott lived at 215 North Everhart Rd., Apt. 2C, West Chester, Pennsylvania. In addition, in the course of the investigation, agents and other law enforcement officers saw Scott's vehicle parked in front of that address. The DEA then passed the information received from the CI to the West Chester Police Department, which in turn provided the information to Officer Josh Lee. At approximately 11:14 p.m., Officer Lee saw Scott inside of the Spare Rib bar. Lee stopped and frisked Scott, and recovered $960 from Scott's person. Scott was arrested, and search of his person incident to the arrest resulted in the recovery of an Ipod Touch, an LG Metro PSC cellular telephone, and a Sanyo Redimobile PCS cellular telephone.

On September 16, 2010, Chief Magistrate Judge Thomas J. Rueter signed warrants authorizing the government to search Scott's residence at 215 North Everhart Road, Apt. 2C, West Chester, Pennsylvania, as well as Scott's vehicle (the 2001 black Buick sedan with Pennsylvania

registration # HHR9404) and the Ipod and cell phones recovered from Scott's person incident to his arrest.

The agents entered the residence using a key recovered from Scott at the time of his arrest. Inside the apt, agents found $29, 689 in United States Currency, jewelry appraised at approximately $15,000, and a loaded gun hidden underneath a set of drawers in the defendant's bedroom. Also in his bedroom, agents recovered crack cocaine and marijuana from a back pack, and numerous small blue and yellow zip lock baggies which are known to be used to package and distribute drugs. The crack cocaine from the back pack was packaged in two knotted clear plastic bags and weighed 10.7 grams, and the marijuana was packaged in five plastic knotted bags, and weighed 62.3 grams. In the kitchen inside a cabinet, agents recovered a pyrex pot which contained crack cocaine which weighed 4.1 grams, a digital scale, and two boxes of baking soda which is a well-known cutting agent for the preparation of crack cocaine. Also recovered from the apartment were numerous documents in the name of Adam Scott, including a Pennsylvania Board of Probation and Parole Violation Warning, dated September 15, 2010.

On January 13, 2011, Defendant filed a Motion to Suppress Evidence (Doc. 22). On January 28, 2011, the Government filed a Response in Opposition thereto (Doc. 28). On February 4, 2011, Defendant filed a Motion to Compel the Production of the Identity of the Alleged Informant (Doc. 30). The Government filed a Response in Opposition thereto (Doc. 40) on February 14, 2011. On April 15, 2011, the court denied the Motions to Suppress Evidence and to Compel the Production of the Identity of the Alleged Informant.

Defendant then filed a motion asking that his Counsel be relieved of his duties on April 26, 2011. The Court granted that motion, and on February 7, 2012, appointed Kenneth C. Edelin, Jr.,

to represent Defendant. On May 9, 2012, Defendant filed a Motion for reconsideration of the Court's denial of Defendant's motion to suppress and for a Frank's Hearing. The Government filed a Response in Opposition thereto (Doc. 43) on May 29, 2012. The Court now addresses the pending motions.

## V.   Discussion

Defendant now moves for reconsideration of the Court's denial of his motion to suppress. In the alternative, Defendant asks that the Court reconsider his request for a *Franks* hearing and conduct an *in camera* interview of the alleged confidential informant to confirm that the informant does exist. In support of his argument, Defendant argues that where defendants lack the information required to meet the standards of Franks, the court can conduct *in camera* examinations of informants to determine if a full adversarial hearing would be fruitful. Defendant further contends that the Court should conduct an in camera interview of the alleged confidential informant given the ambiguities found in the officer's report and affidavit. Defendant Scott also submitted an affidavit that no confidential informant existed and denied ever providing the confidential informant or anyone with information that he was hiding or destroying any guns, drugs or currency as stated in the officer's report.

In response, the Government argues that Defendant's motion is untimely since Defendant filed his motion more than a year after the Court's April 15, 2011 Order and Local Rule 7(g) requires that a motion for reconsideration be filed within 14 days following a court's ruling. The Government further contends that Defendant has failed to meet his burden to show that the Court should reverse its previous ruling or that a Frank's Hearing is in order.

### Defendant's Motion for Reconsideration

The Third Circuit has held that a motion for reconsideration will be granted only if the moving party can demonstrate one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available previously; or (3) the need to correct a clear error of law or fact to prevent manifest injustice.  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  Motions for reconsideration, however, should be granted sparingly "because courts have a strong interest in the finality of judgments."  Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002) (quoting Cont'l Casualty Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)); Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995) ("...reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court.").

Here, the Court agrees with the Government and finds that Defendant has failed to provide it with a basis to reverse its prior decision.  Defendant does not contend that there has been a change in the controlling law or that new evidence arose precipitating a reversal of the Court's prior ruling.  In fact, Defendant failed to provide the Court with any arguments to support his motion; simply reiterating Defendant's original argument in support of his motion to suppress is not grounds for reversal.

**Defendant's Motion is Untimely**

Additionally, the Government correctly points out that Defendant's motion is untimely.  The Court denied Defendant's motion to suppress on April 15, 2011, which means that

Defendant's motion for reconsideration was due April 29, 2011.  *See* Local Rule 7(g)[1]; Crim. Rule 1.2 (incorporating Civil Rule 7(g)).  Defendant filed his motion for reconsideration on May 9, 2012 and offered no explanation for his delay.  Therefore, his motion is untimely.

### **Defendant is Not Entitled to an In Camera Interview of the CI**

Finally, the Court rejects Defendant's argument that it should conduct an *in camera* interview of the confidential informant to determine if a *Franks* hearing is necessary.  As the Court previously noted, to be entitled to a hearing on the truthfulness of an affidavit, a defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to a finding of probable cause.  United States v. Yusef, 461 F.3d 374, 383 (3d Cir. 2006).  In making this preliminary showing, the defendant may not rest on mere conclusory allegations, but rather, the defendant must present an offer of proof contradicting the affidavit, such as sworn affidavits or otherwise reliable statements from witnesses.  Franks, 438 U.S. at 171.  Although Defendant Scott submitted a sworn affidavit claiming that he never made the statements reported by the CI to Agent Koss, Defendant's credibility is questionable.  Therefore, the Court is unwilling to consider him as a reliable source of information.  Furthermore, Defendant's contention that the problem of police perjury suggests that the Court should be inclined to conduct an *in camera interview* is without merit.  Defendant failed to state how the issue of police perjury directly relates this case and offers no evidence, other than his own opinion, which would lead this Court to conclude that Agent Koss' affidavit contained false statements.

---

[1] Local Rule 7(g) provides that "[m]otions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the judgment, order, or decree concerned."

**<u>Conclusion</u>**

Accordingly, for the aforementioned reasons, Defendant's Motion for Reconsideration is denied.  Furthermore, the Court finds that an *in camera* interview of the CI is not necessary.   An appropriate order follows.